**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM E SPECK , | : | CIVIL ACTION NO. **3:CV-14-0992** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| THOMAS J MUNLEY, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    BACKGROUND.

On May 23, 2014, Plaintiff William E. Speck, formerly a prisoner at SCI-Albion, located in

Albion, Pennsylvania, filed, *pro se*, this action on a 10-page form civil rights Complaint, under 42

U.S.C. §1983.[1]  Plaintiff was recently released from prison and he now resides at 2 High Street, Oil

City, PA.  (Docs. 9 & 10).  Also on May 23, 2014, Plaintiff filed a Motion for Leave to Proceed *in*

---

[1]We note that on April 13, 2012, Speck filed a Petition for Writ of Habeas Corpus, under 28 U.S.C § 2254, with this Court.  (Doc. 1, Civil No. 12-0696, M.D.Pa.).  Speck was challenging his 2006 convictions and 2007 sentence of 3 to 7 years imprisonment imposed by the Lackawanna County Court of Common Pleas, Nos. 06 CR 988 and 991.  After Speck's sentence was imposed, he filed a motion for reconsideration of sentence, which was denied by the Lackawanna County Court on January 26, 2011.  (Doc. 8, Civil No. 12-0696).  Speck did not file a direct appeal of his judgment of sentence with the PA Superior Court.  (*Id.*).  Speck filed a PCRA petition with the Lackawanna County Court of Common Pleas which dismissed the petition on August 25, 2010.  (Doc. 1, Civil No. 12-0696).  Speck also filed a petition with the trial court on May 3, 2011, to file an appeal *nunc pro tunc*.  (Doc. 12, Civil No. 12-0696).  On November 20, 2013, the trial court denied Speck's request.  (Doc. 16, Civil No. 12-0696).
On July 14, 2014, the District Court issued a Memorandum and Order dismissing Speck's §2254 habeas petition as time-barred and closed the case.  (Docs. 19 & 20, Civil No. 12-0696).
Thus, to date, Speck has not had his Lackawanna County Court convictions and sentence overturned on appeal or *via* a habeas petition.  As such, we find Speck's instant constitutional claims regarding his Lackawanna County convictions and sentence *Heck* barred.

*forma pauperis* (Doc. 2), and signed a form in which he did not Consent to Jurisdiction by United States Magistrate Judge (Doc. 3). Plaintiff was then issued a Standing Practice Order by this Court (Doc. 4). On May 28, 2014 the United States District Court for the Middle District of Pennsylvania issued a 30 Day Administrative Order directing Plaintiff to pay a filing fee or submit the necessary forms required to proceed *in forma pauperis*. (Doc. 5).

On June 16, 2014, Plaintiff submitted an Authorization form and a certified copy of his trust fund account for the past six months to the Clerk of Court for the United States District Court for the Middle District of Pennsylvania. (Doc. 6). On June 19, 2014, Plaintiff submitted a letter indicating he was no longer incarcerated at SCI-Albion and he was residing in Warren, PA. (Doc. 8). Plaintiff also inquired about what he would need to do in order to obtain legal representation. *(Id.)*.

On June 25, 2014, Sandra L. Gorniak, Accountant for the Pennsylvania Department of Corrections, filed a letter stating that: "On 6/14/14, Mr. William Speck HM1387, an inmate of State Correctional Institution at Albion, was released. The last known address for him is: 215 Hoffman Street, Oil City, PA 16301. Our records indicate that there is a balance due of $350.00 for case #3:14-cv-992; no funds have been deducted from his institutional account." (Doc. 9). Also, on June 25, 2014, Plaintiff notified the Court that his permanent address is 2 High Street, Oil City, PA 16301. (Doc. 10).

Named as Defendants in the instant case are: President Judge of the Lackawanna County Court of Common Pleas, the Honorable Thomas J. Munley; Trial and Sentencing Judge of Lackawanna County Court, the Honorable Michael Barrasse; Lackawanna County District Attorney

Andrew J. Jarbola III; Lackawanna County Assistant District Attorney Lisa A. Swift; former

Lackawanna County Assistant District Attorney Michelle L. Olshefski; and Lackawanna County Clerk

of Courts Mary F. Rinaldi.[2]   (Doc. 1, p. 1).

## II.      ALLEGATIONS OF COMPLAINT (DOC. 1).

In the Statement of Claim of Plaintiff's present Complaint, Doc. 1, pp. 2-8, Plaintiff simply

avers:

> 1. Trial Court (Judge Michael Barrasse) committed reversible error when it granted PCRA Counsel's request to withdraw as counsel (dated 12/31/09) on the basis of a *Turner-Finley* letter that failed to fully comport with applicable standards governing withdrawal in post-conviction/PCRA proceedings, without a hearing, where counsel failed to explain, in detail, the nature and extent of his review, failed to list each issue, failed to argue or mention the charge of simple assault and failed to explain the Defendant's claim lacked merit.

> 2. The Motion to Withdraw, Motion granting this said motion and the order denying PCRA are all docketed on the same date, 8/26/10.

> 3. Judge Michael Barrasse answered this said PCRA only because there was a letter sent to him from the District Court for the Middle District of Pennsylvania dated 8/16/10, from the Honorable Judge Chester Harhut.

> 4. PCRA/Trial Court (Judge Michael Barrasse) committed reversible error when it dismissed the said PCRA Petition without first considering Defendant's Motion for Objection to *Turner-Finley* letter [].

> 5. PCRA/Trial Court committed reversible error when it denied Defendant's Motions and/or requests for case file on numerous occasions, which were necessary for PCRA Proceedings and Appeal process [].

> 6. PCRA/Trial Court has inordinately and/or inexcusably delayed disposing of Defendant's Notice of Appeal, nunc pro tunc, filed 5/3/11, docketed 7/11/11, answered on or about 12/16/13, 31 months after said motion was filed, claiming said

---

[2]We note that Defendant Michelle L. Olshefski is currently an Assistant U.S. Attorney in the Middle District of Pennsylvania.

Motion was untimely.

7. PCRA/Trial Court committed reversible error when it prolonged/delayed Defendant's PCRA and Appeal, nunc pro tunc, until Defendant's prison term of three to seven years was served and expired [].

8. Defendant received (from Kurt T. Lynott, Court Appointed Attorney) a *Turner-Finely* letter dated 12/31/09 received 1/11/10. This said letter did not get docketed until 8/26/10.

9. Defendant filed an Objection to *Turner-Finely* letter dated 1/28/10 and time stamped 2/2/10, in accordance with the prisoner mailbox rule. Said motion does not appear on the docket.

10. On 9/21/10, Defendant attempted to appeal dismissal of PCRA Petition by filing a Notice of Appeal with the Clerk of Courts in accord with the prisoner mailbox rule.

11. On 9/27/10, Defendant attempted to file a Petition For Leave to Appeal In Forma Pauperis (IFP) to the Clerk of Courts.

12. Although Defendant's Appeal and IFP Petition's were mailed to the Clerk of Courts almost a week apart, the clerk time stamped both said Petitions received on 11/18/10, causing them to be time-barred.

13. Despite the Clerk of Courts delay in time stamping said Petitions on 3/2/11 the Clerk returned both said Petitions back to Defendant. Subsequently, 3/2/11 is the date the (IFP) Petition appears on the Docket.

14. Defendant's said Petitions contained no defects that would have prevented them from being transmitted to the Appellate Court named in the notice, therefore, the Clerk of Courts committed an abuse of discretion by sending said Petition back to Defendant, rather than accepting and transmitting them to the [sic] Prothonotary of the Superior Court showing the actual date of receipt, as required by Pa.R.A.P 405(b), causing said Petitions to be time barred.

15. On 5/3/11, Defendant filed a Notice of Appeal, nunc pro tunc, attempting to correct the Clerk of Courts error. This said Notice does not appear on the docket until 7/11/11.

16. The Clerk of Courts did not send to Defendant many Orders/Decisions/Denials from the PCRA/Trial Court, throughout the litigation process for PCRA and Appeal proceedings; In truth there has been nothing but delay's and failure to properly

docket Defendant's filings throughout this litigation of PCRA and Appeal proceedings by the PCRA/Trial Court and the Clerk of Courts.

18. (Sic) Therefore Defendant believes and avers that there is a breakdown in the Clerk of Courts duty prescribed by Pa.R.A.P.905(a)(3), 905(b), and Rule 576, filing, requiring the Clerk, upon receipt of the Petition, shall immediately time stamp them with the date of receipt and enter into the docket.

19. The PCRA/Trial Court erred by prolonging PCRA and Appeal proceedings until Defendant's sentence of three to seven years is served and expired, which it will be 6/14/14, therefore violating Defendant's Due Process rights guaranteed by the Fifth Amendment.

As relief in his Complaint, Doc. 1, p. 4, Plaintiff requests:

1. Petitioner is asking for $100,000 from each Defendant; Jury trial if applicable
2. Petitioner believes and avers that because the PCRA/Trial Court's error in prolonging Defendant's post-sentence proceedings, the Petitioner was unable to properly litigate said proceedings and therefore the Petitioner's Fifth Amendment, Due Process, rights were violated.  Petitioner believes that if he was allowed these rights and was able to properly litigate his post-sentence proceedings, the outcome of the case would have been different . . .

We will now screen Plaintiff's **Document 1** Complaint as required by  the Prison Litigation Reform Act.  *See Banks v. County of Allegheny*, 568, F.Supp.2d 579, 587-88 (W.D. Pa. 2008).

## III.    STANDARDS OF REVIEW.

### A.    PLRA

As stated, the application to proceed *in forma pauperis* was filed pursuant to 28 U.S.C. § 1915.  (Doc. 2).  The Prison Litigation Reform Act of 1995,[3] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act,

---

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

### B.    42 U.S.C. § 1983

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); see *also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v.Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983.").   "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor."  *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

It is well-established that personal liability under section 1983 cannot be imposed upon a

state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362

(1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,*

*supra*.  It is also well-settled in the Third Circuit that personal involvement of defendants in alleged

constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such

personal involvement.  *Id*.  Each named defendant must be shown, through the complaint's

allegations, to have been personally involved in the events or occurrences upon which Plaintiff's

claims are based.  *Id*.  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id*.  Courts have also

held that an allegation seeking to impose liability on a defendant based on supervisory status,

without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

The Court uses the same standard to screen a complaint as it does for a 12(b)(6) motion to

dismiss. *See Tourscher v. McCullough,* 184 F.3d 236, 240 (3d Cir. 1999).

**C.     Motion to Dismiss**

In  *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court

stated:

> The Third Circuit Court of Appeals recently set out the appropriate
> standard applicable to a motion to dismiss in light of the United
> States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,*

550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers*

8

*Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2
(3d Cir. Sept. 24, 2009) (*quoting Twombly,* 550 U.S. at 555) (not
precedential).

## IV.   DISCUSSION.

Initially, there are no allegations of personal involvement by each Defendant in Plaintiff's

Complaint.  (Doc. 1).  The only Defendants that were involved directly with Plaintiff's

Lackawanna County criminal cases were Defendants Judge Michael J. Barrasse, trial judge, and

Assistant District Attorney Michelle L. Olshefski, prosecutor.  (Lackawanna County Criminal

Dockets 988 and 991).[4]   The only Defendant that Plaintiff specifically mentions in his

Complaint is Judge Michael J. Barrasse, the trial judge.  (Doc. 1)  The law is clear that §1983

does not create a cause of action.  *See Doe v. Delie,* 257 F.3d 309, 314 (3d Cir. 2001).  "Rather,

a Plaintiff must prove an underlying statutory or constitutional violation in order to prevail under

[§1983]." *Douris v. Bucks County Office of District Attorney,* 2005 WL 226151, *12 (E.D. Pa.

Jan. 31, 2005).

The Court in *Rogers v. U.S.,* 696 F.Supp.2d 472, 488 (W.D. Pa. 2010), repeated the

personal involvement necessary in civil rights action, and stated:

> When a supervisory official is sued in a civil rights action, liability can only be
> imposed if that official played an "affirmative part" in the complained-of
> misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986). Although a
> supervisor cannot encourage constitutional violations, a supervisor has "no
> affirmative constitutional duty to train, supervise or discipline so as to prevent
> such conduct." *Id. quoting Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d
> Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997

---

[4]We have obtained a copy of Plaintiff Lackawanna County Criminal Dockets for cases
number 06 CR 988 and 991 at http://ujsportal.pacourts.us.   We take judicial notice of these
Dockets since they are public state court records.

(1991). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Section 1983 liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293-1295 (3d Cir.1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. *Rode,* 845 F.2d at 1208; *Cooper v. Beard,* 2006 WL 3208783 at *14 (E.D.Pa. Nov. 2, 2006).

As discussed above, we do not find that the Plaintiff has specifically stated the personal involvement of each Defendant with respect to his constitutional claims.  *See Rogers, supra.*  In *Carpenter v. Klopotoski* , 2011 WL 995967, *7, (M.D. Pa. 3-17-11),  the Court stated:

> To maintain a claim for supervisory liability, plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293 (3d Cir.1997); *Baker v. Monroe Twp.,* 50 F.3d 1186, 1190-91 (3d Cir.1995).

We also find that Plaintiff does not state any cognizable constitutional claims in his Complaint, even liberally construing him as raising a Due Process claim under the Fifth and Fourteenth Amendments.

As noted, we take judicial notice of two Lackawanna County Criminal Dockets.  The first Docket, CP-35-CR-0000988-2006, indicates that Plaintiff was arrested on April 6, 2006, and

charged with Simple Assault, 18 Pa.C.S.A. §2701(a), and two counts of Terroristic Threats with Intent to Terrorize Another, 18 Pa.C.S.A. §2706(a)(1). Plaintiff's second Lackawanna County Criminal Docket, CP-35-CR-0000991-2006, indicates that Plaintiff was also charged with Forgery-Unauthorized Act in Writing, 18 Pa.C.S.A. §4101(a)(2), Theft By Decep-False Impression, 18 Pa.C.S.A. §3922(a)(1), and two counts of Receiving Stolen Property, 18 Pa.C.S.A. §3925(a).

On April 25, 2005 Plaintiff signed a Waiver of Arraignment for both Lackawanna County Court cases. On September 15, 2006, Plaintiff entered a guilty plea in front of Defendant County Court Judge Michael J. Barrasse. (Docket Nos. 988 & 991). On January 4, 2007, Plaintiff's Sentence was imposed. (*Id*.). Plaintiff filed, *pro se*, a Motion for Reconsideration of Sentence on January 16, 2007. (*Id*.). Judge Michael J. Barrasse denied Plaintiff's Motion on January 26, 2007. (*Id*.). Plaintiff filed, *pro se*, a Petition for assignment of counsel on April 18, 2007. *(Id*.). On December 18, 2007, Plaintiff filed Petition for Post Conviction Collateral Relief. *(Id*.). Judge Michael J. Barrasse granted Motion for New Counsel on March 31, 2008. (*Id*.). On May 14, 2010, Plaintiff Motioned for Removal and assignment of Counsel. (*Id*.). Judge Michael J. Barrasse denied Post-Conviction Relief Act Petition on August 28, 2010. (*Id*.).

We find that Plaintiff's claims that Defendants violated his constitutional rights with respect to his arrest on April 6, 2006, his criminal prosecution and his sentencing on January 4, 2007, are all barred under *Heck v. Humphrey*, 512 U.S. 477, 486, 114 S.Ct. 2364 (1994). We find that Plaintiff's success on his instant §1983 action would "necessarily demonstrate" the invalidity of Plaintiff's arrest, criminal prosecution and convictions in his criminal cases in

Lackawanna County Court.  *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006); *Hess v. Chronister*, 247 Fed.Appx. 377, 380 (3d Cir. 2007).  "The *Heck* bar would apply whether Plaintiff is still a pretrial detainee or whether he has already been convicted of the charges for which he is currently incarcerated." *Asque v. Commonwealth Allegheny Cnty.*, 2007 WL 1247051 (W.D.Pa. Apr. 27, 2007). We find that if Plaintiff receives a favorable decision in this civil rights action, it would necessarily call into question the validity of Defendant Judge Michael J. Barrasse's sentence with respect to the criminal convictions of Plaintiff.  As noted above, to date, Plaintiff Speck has not had his Lackawanna County Court convictions and sentence overturned on appeal or *via* a habeas petition.  In fact, as noted, Plaintiff's §2254 habeas petition challenging his  Lackawanna County Court convictions and sentence was recently dismissed by this federal Court on July 14, 2014. Thus, we find Plaintiff's present constitutional claims challenging his Lackawanna County Court convictions and sentence are *Heck* barred. *See Williams v. Consovoy*, 453 F.3d at 177; *Wilkinson v. Dotson*, 544 U.S. 74, 81-82, 125 S.Ct. 1242 (2005).

Further, we find that Defendant Judge Michael J. Barrasse and Defendant Judge Thomas J. Munley are entitled to judicial immunity with respect to Plaintiff claim for damages in this case.   As mentioned, Plaintiff only requests money damages against each Defendant.  To the extent that Plaintiff is raising constitutional claims against Judge Michael J. Barrasse and Judge Thomas J. Munley  and he is seeking money damages, we will recommend that these claims against these judicial Defendants be dismissed with prejudice.  We find that Plaintiff's claims against Defendants Judge Barrasse and Judge Munley  regarding his convictions and sentence as

well as the denial of his appeals are barred based on the doctrine of judicial immunity.  We find

that the Eleventh Amendment of the United States Constitution protects these two judicial

Defendants from suit in federal court because Plaintiff clearly sues them entirely for acts taken in

their judicial capacities during Plaintiff's Lackawanna County criminal cases, such as dismissing

his PRCA Petition. *See Stankowski v. Farley*, 487 F. Supp. 2d 543 (M.D. Pa. 2007); *Clark v.

Conahan*, 737 F.Supp. 2d 239, 255-56 (M.D. Pa. 2010); *Dougherty v. Snyder*, 2011 WL

1871226, *13; *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp. 2d 672,

696 W.D. Pa. 2009).

In *Clark*, 737 F.Supp. 2d at 256, the Court stated:

> For judicial immunity to apply, only two requirements must be met: 1)
> jurisdiction over the dispute, and 2) a judicial act. *Id.* at *7. As to the first, a
> judge is not immune only when he has acted in the "clear absence of all
> jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d
> 331 (1978) (citation omitted). As to the second prong, judicial immunity
> extends only to "judicial acts," not administrative, executive, or legislative
> ones. *Id.* at 360–61, 98 S.Ct. 1099.  "[T]he scope of the judge's jurisdiction
> must be construed broadly where the issue is the immunity of the judge."
> *Stump,* 435 U.S. at 356, 98 S.Ct. 1099 (citation omitted). The fact that the
> judge was incorrect about the status of jurisdiction or that there were
> procedural errors causing the judge to act without jurisdiction does not satisfy
> the requirements for defeating immunity. *Gallas v. Supreme Court of
> Pennsylvania,* 211 F.3d 760, 771 (3d Cir.2000).  In determining whether an
> act is judicial, it is appropriate to consider 'the nature of the act itself, *i.e.,*
> whether it is a function normally performed by a judge,' and 'the expectations
> of the parties, *i.e.,* whether they dealt with the judge in his official capacity.' "
> *Wallace,* 2009 WL 4051974, at *7 (quoting *Stump,* 435 U.S. at 362, 98 S.Ct.
> 1099). "Acts which are traditionally done by judges include issuing orders,
> resolving cases and controversies, making rulings, and sentencing criminal
> defendants. Other actions such as sending a fax, or hiring and firing
> subordinates, have been found to be administrative, rather than judicial, acts.
> Note, however, that even if an act is not judicial, there may be still be
> immunity if the act is legislative or executive in nature." *Id.*

Based on *Stankowski v. Farley*, 487 F. Supp. 2d 543 (M.D. Pa.  2007), and *Clark*, we find that  Defendants Judge Michael J. Barrasse and Judge Thomas J. Munley are entitled to absolute judicial immunity with respect to Plaintiff's claims against them insofar as Plaintiff only seeks monetary damages.  As discussed, Plaintiff does not even state the personal involvement of Defendant Judge Munley in his Complaint as required.  We find that Plaintiff's present claims against Defendant Michael J. Barrasse clearly relate to his duties as a Judge in presiding over the criminal case against Plaintiff, in sentencing Plaintiff and in dismissing Plaintiff's PCRA Petition, and that these claims are clearly precluded by absolute judicial immunity.  *See Stankowski v. Farley*, 487 F. Supp. 2d 543 (M.D. Pa.  2007).

Additionally we find that the remaining defendants, Andrew J. Jarbola III, District Attorney, Lisa A. Swift, Assistant District Attorney, Michelle L. Olshefski, Assistant District Attorney, and Mary F. Rinaldi, Clerk of Court, are entitled to prosecutorial immunity and quasi-judicial immunity, respectively, due to the fact that the claims against them were filed in relation to their judicial duties.

Specifically, we find that Defendant Rinaldi, Lackawanna County Clerk of Court is entitled to quasi-judicial immunity.  Defendant Rinaldi, Lackawanna County Court of Common Pleas  Clerk of Court, is part of the state judicial personnel.  See 42 Pa.C.S.A. §1905(a).  *See Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp. 2d 672, 694-695.  As such, Plaintiff's factual allegations against Defendant Rinaldi are that she acted wrongly in connection with the filing of documents in Plaintiff's criminal case.  We find that Plaintiff's allegations against Defendant Rinaldi  clearly involve quasi-judicial functions and are part of Rinaldi's duties

14

as a quasi-judicial officer.  Thus, we find that Defendant Rinaldi is entitled to immunity in her

capacity as a quasi judicial officer.

In *Herrschaft v. Smithson*, 2010 WL 4973269, *2 (M.D. Pa. 10-6-10) adopted by 2011

WL 1063478 (M.D. Pa. 3-22-11), the Court stated:

> As this court has previously set forth:
>
>> The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, *Mireless v. Waco*, 502 U.S. 9, 13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Imbler v. Pachtman*, 424 U.S. 409, 427, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); and those who perform adjudicative functions, *Imbler*, 424 U.S. at 423 n. 20 (grand jurors); *Harper v. Jeffries*, 808 F.2d 281, 284 (3d. Cir.1986) (parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.
>> The scope of these protections extend beyond judges and prosecutors to those who take discretionary actions at the direction of the courts. As this court has observed:
>> Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, also are immune from suit. *See Gallas*, 211 F.3d at 772-73 (court administrator entitled to immunity for release of information ordered by a judge); *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court direction, was immune from suit). The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir.1992). *See also Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants in the judicial process enjoy quasi-judicial immunity as well."). Quasi-judicial absolute immunity is

> available to those individuals, ..., who perform functions closely
> associated with the judicial process. *Marcedes v. Barrett*, 453
> F.2d 391 (3d Cir.1971) (holding that quasi-judicial immunity
> applied to clerk of courts, an administrative assistant to the
> president judge and a court reporter); *Henig v. Odorioso*, 385
> F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees
> executing judicial orders are immune from suit); *Davis v.
> Philadelphia County*, 195 F.Supp.2d 686 (E.D.Pa.2002) (holding
> that quasi-judicial immunity applies to court staff, such as clerks
> of judicial records and court reporters).

*Wager v. York County Domestic Relations, 2010 WL 231129, *8 (M.D.Pa.2010)*FN2
(Conner, J.) (quoting *Stout v. Naus,* 2009 WL 1794989, at 3 (M.D.Pa.2009)
(McClure, J.)).

In *Dougherty v. Snyder*, 2011 WL 1871226, *14, the Court specifically addressed

whether a County Court Administrator was entitled to immunity from damages in a §1983 suit.

The Court in *Dougherty v. Snyder*, 2011 WL 1871226, *14, stated:

> Court Administrator Chuk also asserts immunity from damages, citing in part, *Ball
> v. Hartman,* No. 09–844, 2010 WL 146319, at *6–7 (M.D.Pa. Jan. 11, 2010)
> (associate court administrator entitled to quasi-judicial immunity when acting "as
> an extension of the court in exercising her responsibilities of case management").
> We agree that quasi-judicial immunity extends to defendant Chuk for Plaintiff's
> damages claim against him as he is only alleged to have assigned the mandamus
> action against defendant Lee to Judge Linebaugh. *See also Erb v. Sullivan,* No.
> 09–2123, 2010 WL 4922732, at *4–5 (M.D.Pa. Sept.10, 2010) (court
> administrator entitled to quasi-judicial immunity for answering questions
> regarding the "call of the list"), approved 2010 WL 4919068.

Therefore, we will recommend that Defendant Rinaldi be dismissed with prejudice.

Based upon the above, we find that the Court should not allow Plaintiff to amend his Complaint

with respect to any claims against Defendant Rinaldi since we find it would be futile.  *See*

*Dougherty v. Snyder*, *supra*. *See also  Grayson v. Mayview State Hospital*, 293 F.3d at 111*;*

*Alston v. Parker*, 363 F.3d at 235-236.

Furthermore, to the extent Plaintiff has named Lackawanna County District Attorney's Office prosecutors  Jarbola, Swift and Olshefski as Defendants due to their criminal prosecution of Plaintiff, we find that these Defendants are entitled to prosecutorial immunity with respect to Plaintiff's claims for damages. The issue arises as to whether Plaintiff's claims, insofar as they are only seeking damages against Jarbola, Swift and Olshefski, should be dismissed because prosecutors enjoy absolute immunity when performing official duties during a criminal prosecution of a defendant.  *See Sanders v. Downs*, 420 Fed.Appx. 175, 180 (3d Cir. 2011)(citation omitted).

As the Court held in *Williams v. Marino*, Civil No. 03-0632, M.D. Pa., a District Attorney is entitled prosecutorial immunity with respect to a Plaintiff's  request for monetary damages if they are based on the District Attorney's performance of his official duties in prosecuting Plaintiff.  *See Stankowski v. Farley*, 487 F. Supp. 2d 543 (M.D. Pa.  2007); *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Radocesky v. Munley*, 247 Fed. Appx. 363, 365 (3d Cir. 2007)("The decision whether or not to initiate or prosecute a case is completely discretionary with prosecutors and also is absolutely immunized from a suit for damages.")(citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)).

In *Light v. Haws*, 472 F. 3d 74, 77-78 (3d Cir. 2007), the Third Circuit stated:

> "Most public officials are entitled only to qualified immunity" from Section 1983 actions. *Yarris v. County of Delaware,* 465 F.3d 129, 135 (3d Cir.2006); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (ordinarily, "[q]ualified immunity represents the norm") (internal quotation marks and citations omitted). Nonetheless, in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that, in light of the immunity historically accorded prosecutors at common law, state prosecutors

17

are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role. *Id.* at 427, 431, 96 S.Ct. 984. This protection is "not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." *Kalina v. Fletcher,* 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (internal quotation marks and citations omitted). This court has since amplified that "participation in court proceedings and other conduct intimately associated with the judicial phases of litigation" are "actions performed in a quasi-judicial role." *Carter v. City of Philadelphia,* 181 F.3d 339, 356 (3d Cir.1999) (internal quotation marks and citations omitted). We have given as other examples of prosecutorial actions that warrant absolute immunity, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State[.]" *Yarris,* 465 F.3d at 135 (internal quotation marks and citations omitted); *McArdle v. Tronetti,* 961 F.2d 1083, 1085 (3d Cir.1992) (holding that prison physician and prison counselor were absolutely immune as to their testimony in court and psychiatric reports to the judge, as that was an "integral part of the judicial process").

*See also Gregg v. Pettit*, 2009 WL 57118, *4 (W.D. Pa.).

We find that even though Plaintiff does not state the personal involvement of Defendants Jarbola, Swift and Olshefski with respect to his claims, it appears that Defendants Jarbola, Swift and Olshefski's involvement was as prosecutors in Plaintiff's Lackawanna County Court criminal cases, which were presided over by Defendant Judge Barrasse.  In fact, Plaintiff's allegations in his Complaint indicates that Defendants Jarbola, Swift and Olshefski were acting as prosecutors and supervisors. Thus, it appears that any claims Plaintiff is asserting against Defendants Jarbola, Swift and Olshefski are closely tied to the judicial phase of the criminal proceedings against Plaintiff in Lackawanna County as to render them absolutely immune from the requests for money damages Plaintiff is making.

We find that insofar as Plaintiff is only seeking  damages against Defendants Jarbola, Swift and Olshefski, his claims are precluded by absolute prosecutorial immunity.  Thus, we will recommend that the damages claims Plaintiff is asserting  against Defendants Jarbola, Swift and Olshefski be dismissed with prejudice.  We find futility of any amended pleading with respect to Plaintiff's damages claims against Defendants Jarbola, Swift and Olshefski  since we find that they are precluded by absolute prosecutorial immunity.  *See Light, supra.*  Additionally, as discussed above, we find that any constitutional claims Plaintiff is asserting  against Defendants Jarbola, Swift and Olshefski should be dismissed since they are *Heck* barred.

## V.      RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that Plaintiff's Complaint **(Doc. 1)** be dismissed with prejudice, in its entirety, as against all Defendants.  Further, it is recommended that Plaintiff's Motion for Leave to Proceed *in forma pauperis* **(Doc. 2)** be granted solely for the purpose of filing this action.    Finally, it is recommended that the Court close this case.

 s/ **Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 28,2014**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM E. SPECK, | : | CIVIL ACTION NO. **3:CV-14-0992** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| THOMAS J. MUNLEY, *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **July 28, 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

20

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.


_____  s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 28, 2014**